DENNIS M. VANDER HOOK AND JUDY E. VANDER HOOK, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Vander Hook v. Commissioner
Docket No. 5179-76
United States Tax Court
T.C. Memo 1977-347; 1977 Tax Ct. Memo LEXIS 95; 36 T.C.M. (CCH) 1394; T.C.M. (RIA) 770347; September 29, 1977, Filed Dennis M. Vander Hook, pro se. Karl D. Zufeld, for the respondent. WILBUR MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1972 and 1973 in the amounts of $1,061 [1] and $1,574, respectively. The sole issue for decision is the valuation of a fractional interest petitioners acquired in six paintings and subsequently donated to Pepperdine University. FINDINGS OF FACT The petitioners, husband and wife, resided in Canoga Park, California at the time of filing the petition *96 herein. Petitioners filed timely joint Federal income tax returns for the years 1972 and 1973 with the Fresno Service Center, Fresno, California. On February 17, 1972, Legal Dynamics, Inc., a California corporation transferred a fractional interest in six paintings to Dennis M. Vander Hook for a total consideration of $1,200. This interest was described in the bill of sale as follows: Twelve thousand dollars worth of that below-described art collection currently appraised at $250,000: Painting attributed to Jacques-Louis David, 1748-1825, oil on canvas, 51 1/2inch X 63 3/4inch Painting attributed to Bartolome-Esteban Murillo, 1618-1682 Painting by Master of Saint Antoin, 9 1/2inch X 7-1/4inch Painting attributed to H. Harris Brown Painting attributed to Guiseppi-Maria Crespi, 1665-1741 Painting attributed to Francisko Zurbaran, 1598-1664, 13 1/2inch by 16 1/2inch The painting allegedly done by David was entitled "A Lady of the Court of Napoleon;" that allegedly by Murillo was entitled "Saint Joseph with Infant Jesus;" that allegedly by Master of Saint Antoin was entitled "Vision of Szent Antal;" that allegedly by Crespi was entitled "The Crucifixion;" and that allegedly *97 by Zurbaran was entitled "Kneeling Figure of a Saint." The painting by H. Harris Brown was entitled "The Bishop of Emmaus." Legal Dynamics, Inc., was incorporated on November 2, 1971, to provide legal services to labor unions, including estate and tax planning services. Its principal office was located in Los Angeles County but was not separate and apart from the offices of the lawyer, Brent Carruth (hereinafter Carruth), who organized Legal Dynamics.
The paintings in question, although transferred by Legal Dynamics, were acquired directly or indirectly from Frederic Stern (hereinafter Stern), who, within a short time after selling the paintings to Legal Dynamics, appraised the paintings at $250,000. In essence, Legal Dynamics, which acquired the art collection for $12,000, acted as an intermediary by arranging to purchase the art collection and sell fractional interests immediately thereafter. Legal Dynamics also secured the charitable donee for the collection and effected the transfer. Legal Dynamics represented that the collection would be appraised in excess of cost with the resulting tax savings to he purchasers, and secured the following appraisals from Stern and Harry *98 Muir Kurtzworth (hereinafter Kurtzworth): Stern
Kurtzworth
A Lady of the Court of Napoleon
$150,000
$160,000
Saint Joseph with Infant Jesus
12,000
14,000
Vision of Szent Antal
18,000
18,000
Bishop of Emmaus
15,000
25,000
The Crucifixion
35,000
35,000
Kneeling Figure of a Saint
20,000
20,000
$250,000
$272,000
Kurtzworth raised his appraisal at the request of James Hewitt, president of Legal Dynamics. Between February and September 1972, the art collection was physically located in the offices of Carruth. The collection was not insured, and no particular precautions were taken to prevent theft or other loss. Subsequent to the transfer of the paintings to Pepperdine University, one of the respondent's expert witnesses inspected and evaluated the paintings at the University. He was told that three of the paintings were not available, two of them having been lost and one of them having been stolen. Two of these three paintings were the painting allegedly done by Murillo entitled "St. Joseph with Infant Jesus" and the painting allegedly done by Crespi entitled "The Crucifixion." Petitioners claimed a charitable contribution of $12,000 *99 for their interest in the paintings, part of which was claimed in 1972 and part of which was carried over into 1973. Respondent originally disallowed all but $1,200 as a charitable deduction, and, in an amended answer, disallowed all but $47. OPINION Petitioner Dennis M. Vander Hook acquired a fractional interest in six paintings which he donated to Pepperdine University. Respondent concedes that the donation was made to an educational institution that qualifies as a charitable organization under section 170 [2] and that the property was used by the donee in a manner functionally related to its exempt purposes. Additionally, respondent concedes that if the property in issue had been sold on the date of the donation the entire gain would have been long-term capital gain making the requirements of section 170(e) inapplicable in the present case. Therefore, the only issue we confront is the fair market value of the property donated to Pepperdine University which is the measure of the deduction allowable in this case. The regulations define fair market value as the price a *100 willing buyer would pay to a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts. Section 1.170A-1(c)(2), Income Tax Regs.; Jarre v. Commissioner,64 T.C. 183 (1975); Mauldin v. Commissioner,60 T.C. 749 (1973). Respondent contends that the paintings allegedly done by: David "A Lady of the Court of Napoleon," Murillo "Saint Joseph with Infant Jesus," Master of Saint Antoin "Vision of Szent Antal," Crespi "The Crucifixion," and Zurbaran "Kneeling Figure of a Saint" are not authentic and produced two experts who supported his position. Conversely, petitioners contend that these paintings are authentic and also produced the testimony of two expert witnesses. [3] Thus, the nub of the controversy turns on whether these five paintings are authentic. We have no hesitancy in sustaining respondent. Kenneth Donahue (hereinafter Donahue) the director of the Los Angeles County Museum of Art, testified that none of these five paintings are *101 authentic. Donahue's knowledge of the various artists involved, including other works they had painted, the historical period during which they worked, and the compositions and manner of execution characteristic of their work, was extremely comprehensive. Donahue was an articulate witness who carefully analyzed the paintings in issue. For example, a good picture of a representative work by Crespi entitled "The Holy Family" was introduced into evidence and Donahue contrasted this work in detail with one of the paintings here in issue entitled "The Crucifixion," which petitioners contend was also painted by Crespi. When the pictures were compared in the light of the careful analysis of Donahue, the lack of authenticity of "The Crucifixion" was apparent even to the lay person. Stern's report was stipulated into evidence and Kurtzworth appeared and testified on the paintings for petitioners. Kurtzworth's comments were not specifically directed to the various attributes of the paintings in any detail, and we have little confidence that there was a reasonable basis for his opinion that the paintings were genuine. He exhibited very little familiarity with the specific works of some *102 of the artists alleged to have been responsible for the paintings in issue. [4] He took the position that he was valuing the specific paintings in question, that he was not required to focus on other paintings of the artists in question, and did not see any need to exhibit any familiarity with these other paintings. Even more damaging, Kurtzworth admitted that he raised the valuations above his original estimate at the request of Hewitt of Legal Dynamics because a higher valuation was needed. Petitioner Dennis M. Vander Hook testified that prior to acquisition of the paintings, their valuation was discussed and the purchasers were led to believe that the paintings had a value that accorded with that subsequently included in Stern's and Kurtzworth's reports. Although a xeroxed copy of a "Who's Who" insert on Kurtzworth was included in the record, there is no evidence that significant purchases are being made based on his judgment, or that he is affiliated with any museums, art galleries, or universities in a responsible capacity. Based on the limited information and knowledge he exhibited of the relevant attributes *103 of the paintings in question, and his failure to relate the paintings in question with other works of the purported artists, we do not find Kurtzworth's testimony helpful.[5] The stipulated report of Stern must be discounted also. It was prepared pursuant to the request of the sellers--indeed Stern was apparently one of the sellers--and since the purchasers appear to have been misled by the sellers, we are inclined to discount substantially the valuation of one of the principal proponents of the sale. In addition to our analysis of the expert testimony there are other factors that make it clear that respondent must be sustained. It seems wholly unlikely that paintings worth $250,000 would be transferred for less than 10 percent of their value as petitioners allege. Additionally, if the paintings had anything more than *104 negligible value Pepperdine University, the donee, would certainly have treated them with a good deal more care. Donahue reviewed and evaluated the paintings at Pepperdine University on April 11. He was told that three of the paintings were not available, two of them having been lost and one of them had been stolen. Two of these paintings were the paintings by Murillo and "The Crucifixion" ostensibly by Crespi. We also note that when petitioner Dennis Vander Hook and his associates purchased the art the paintings were stored somewhere in the building where Carruth (the lawyer who put the transaction together) had his offices. The paintings were not even insured, nor were any special precautions taken to preclude their loss due to theft or fire. This manner of caring for them is wholly inconsistent with the theory that they had anything like the value attributed to them by petitioners. [6]
For all of these reasons, we feel that the only painting that was authentic was "The Bishop of Emmaus" by H. Harris Brown. He was an obscure artist and the painting was damaged *105 when reviewed by Donahue at Pepperdine University. We feel that the value respondent placed upon it was a correct one. The others not being authentic paintings and many of them being poorly done, were valuable simply as decorative art to be used in a hotel, home or a religious institution. We find that the evidence as a whole supports a deduction of only $1,200 as allowed by respondent in the deficiency notice. To the extent respondent contends that the donated interest was worth less than this amount, respondent has the burden of proof since the contention was first made in the amended answer. [7]Rule 142(a), Tax Court Rules of Practice and Procedure. While the evidence does not justify the allowance of a greater amount, neither does it support a lesser deduction. We have examined the evidence carefully and remain convinced that the value of the contributed interest was $1,200. Decision will be entered under Rule 155. Footnotes
1. In an amended answer, respondent alleged an increase of $301.53 in the deficiency for 1972 resulting in a total deficiency for that year of $1,362.53.↩
2. All references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
3. Stern was ill and unable to attend the trial but his report, which was attached to petitioners' returns, was stipulated to by the parties.↩
4. See Weil v. Commissioner,T.C. Memo. 1967-78↩.
5. Since David was a prolific artist and the painting attributed to him alleged to be worth $160,000, the failure to contrast the work in issue with his other works is puzzling. Also, when asked about Provenance, or the history of the painting in question, Kurtzworth indicated that that kind of information does not come as far out as California very often.↩
6. We also note that there was some attempt made to market the paintings prior to the donation without success.↩
7. On brief respondent states that petitioners' interest in the paintings was not worth more than $1,200, but he filed an amended answer claiming that petitioners' interest was worth only $47.↩